# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| CHRIS JEROME DIXON,<br><br>*Plaintiff,*<br><br>v.<br><br>**Chief of Police TOMMY WALKER; Judge MICHAEL RANSOM; CITY OF SPARTA, GEORGIA; and COUNTY OF HANCOCK, GEORGIA,**<br><br>*Defendants.* | **CIVIL ACTION NO.**<br>**5:25-cv-00359-TES** |

## ORDER

Pro se Plaintiff Chris Jerome Dixon commenced this civil action on August 25, 2025, by filing a Complaint [Doc. 1] and Motion for Leave to Proceed *In Forma Pauperis* ("IFP") [Doc. 2]. Also with his Complaint, Plaintiff filed a Motion to Quash Arrest Warrant [Doc. 3]. Before addressing the substance of Plaintiff's Complaint and his Motion to Quash, the Court first turns to his IFP Motion.

**A.    Plaintiff's Motion for Leave to Proceed IFP**

District courts may allow a plaintiff to file a lawsuit without prepaying fees and costs under 28 U.S.C. § 1915. This statute states:

> [Generally], any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of

all assets such prisoner possesses[1] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

28 U.S.C. § 1915(a)(1). A plaintiff's application is sufficient to warrant a waiver of filing fees if it "represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004). After reviewing the statements Plaintiff makes in his application, *see generally* [Doc. 2], the Court **GRANTS** his Motion for Leave to Proceed *In Forma Pauperis*.

B.   **Frivolity Review**

Having granted Plaintiff IFP status, § 1915(e) requires the Court to screen his Complaint and determine whether it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e). The Eleventh Circuit has determined that "§ 1915(e), which governs [IFP] proceedings[,] generally permits district courts to dismiss a case 'at any time' if the complaint 'fails to state a claim on which relief may be granted.'" *Robinson v. United States*, 484 F. App'x 421, 422 n.2 (11th Cir. 2012) (per curiam). The Court can also dismiss an action at any time if it determines that the claims

---

[1] "Despite the statute's use of the phrase 'prisoner possesses,' the affidavit requirement applies to all persons requesting leave to proceed [IFP]." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 n.1 (11th Cir. 2004).

sought in it are frivolous or malicious or seek monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) and (iii).

The proper contours of the term "frivolous," have been defined by the Supreme Court to encompass complaints that, despite their factual allegations and legal conclusions, lack an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). These types of complaints are subject to sua sponte dismissal by a district court. *Id.* at 324 (noting that dismissals under § 1915(e) "are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints").

More specifically, to survive this initial review, a claim must contain "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke*, 490 U.S. at 326 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Operating on the assumption that the factual allegations in the complaint are true, such dismissal procedure streamlines litigation by dispensing with unnecessary discovery and factfinding. *Id.* However, a complaint will survive under Rule 12(b)(6) if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft*, 556 U.S. at 678–79).

Frivolity review under § 1915(e), on the other hand, has a separate function. Section 1915(e) is designed to discourage the filing of—and waste of judicial and private resources upon—baseless lawsuits that paying litigants generally do not initiate due to filing costs and the potential threat of sanctions associated with filing such a lawsuit. *Neitzke*, 490 U.S. at 326. "To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of [a] complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* Even though Rule 12 and § 1915(e) both counsel dismissal and share "considerable common ground" with each other, one dismissal standard does not invariably encompass the other. *Id.* at 328. "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against [a] plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate, but dismissal on the basis of frivolousness is not." *Id.*

C.      **Plaintiff's Complaint**

Courts must construe complaints filed by pro se plaintiffs liberally and hold their allegations to a less stringent standard than formal pleadings drafted by lawyers. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). In his Complaint, Plaintiff, who is a North Carolina resident, states that he "brings this civil rights action pursuant to 42 U.S.C. § 1983 to redress the [alleged] deprivation of his constitutional rights by law enforcement and judicial officials in the State of Georgia." [Doc. 1, p. 1]. As listed in the

caption above, Plaintiff sues the Chief of Police for the City of Sparta, Chief Thommy Walker; a Hancock County magistrate judge, Judge Michael Ransom; the City of Sparta, Georgia; and Hancock County, Georgia. [*Id.*]. More specifically, Plaintiff sues Chief Walker in his individual and official capacities and sues Judge Ransom in his official capacity. [*Id.*]. As for the city and county, Plaintiff states that he's suing the City of Sparta because it is "responsible for the policies and oversight of its police department" and that he's suing Hancock County because it "oversees the judicial functions of the Hancock County Magistrate Court." [*Id.* at pp. 1–2].

In February 2024, while at a convenience store in Sparta, Georgia, Plaintiff says that Chief Walker approached and questioned him without any *Miranda* warning. [*Id.* at p. 2]; *see also* [Doc. 1-2, ¶ 1 (alleging "In February of last year")]. Attached to his Complaint, Plaintiff submitted an Affidavit [Doc. 1-2] which the Court **CONSTRUES** as a Supplemental Complaint rather than an actual affidavit.[2] In his Supplemental Complaint, Plaintiff alleges that "Chief Walker began questioning [him] about a firearm that had gone missing." [Doc. 1-2, ¶ 2]. Having already told Chief Walker "earlier that

---

[2] "Federal courts sometimes will ignore the legal label that a pro se litigant attaches to a [filing] and recharacterize [it] in order to place it within a different legal category." *Retic v. United States*, 215 F. App'x 962, 964 (11th Cir. 2007) (quoting *Castro v. United States*, 540 U.S. 375, 381 (2003)). Courts may do this "to create a better correspondence between the substance of [a filing] and its underlying legal basis." *Id.* Rather than consider Plaintiff's Affidavit as evidence in support his claims, the Court simply regards it as a Supplemental Complaint, taking each and every allegation as true, to further explain the underlying bases for his claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

5

week" that he "did not know who had the gun," Plaintiff states that "[d]uring this unsolicited encounter . . . in front of others inside the store" he "firmly responded by telling [Chief Walker] to get out of [his] face with that matter." [*Id.* at ¶¶ 2–3]. After "verbally declin[ing] to engage," Plaintiff then alleges that he "calmly" and "peacefully" "exited the store," got in his Jeep, and returned home "*without incident*." [Doc. 1, p. 2]; [Doc. 1-2, ¶ 4 (emphasis added)].

Plaintiff alleges that Chief Walker, "[s]hortly thereafter," "submitted a false report" to Judge Ransom "alleging that Plaintiff fled and obstructed an investigation" even though—so Plaintiff claims—he did not "flee, attempt to evade, or obstruct" Chief Walker.[3] [Doc. 1, p. 2]; [Doc. 1-2, ¶¶ 4, 6]. Finally, Plaintiff states that he "was not informed of the [arrest] warrant" signed by Judge Ransom (which Plaintiff asserts was issued "without any investigation or due process") but only learned about it through Facebook. [Doc. 1, p. 2]; [Doc. 1-2, ¶ 6]. Included in the arrest warrant were charges of fleeing, eluding, and obstruction, and Plaintiff "assert[s] that these charges are false." [Doc. 2-1, ¶¶ 6–7].

Based on these allegations, it appears that Plaintiff asserts "[u]nlawful [s]eizure and [w]arrant" claims under the Fourth Amendment against all Defendants, a Due Process claim under the Fourteenth Amendment against all Defendants, and a First

---

[3] During their encounter at the convenience store, Chief Walker, according to Plaintiff's allegations, never informed Plaintiff that he "was being detained or placed under arrest." [Doc. 1-2, ¶ 5].

6

Amendment retaliation claim against Chief Walker. [Doc. 1, p. 2]. For relief, Plaintiff seeks a declaratory judgment that "Defendants violated [his] constitutional rights," an injunction "prohibiting enforcement of the [allegedly] unlawful warrant," as well as compensatory and punitive damages, and attorney's fees under 42 U.S.C. § 1988. [*Id.*].

D. <u>Discussion</u>

To be clear, the Court makes no determination with respect to the veracity of Plaintiff's factual allegations from his Complaint or his Supplemental Complaint, and in accordance with the above-stated legal standard, the Court accepts them as true. *See Iqbal*, 556 U.S. at 678; *see also* n.2, *supra*. As a sort of road map for the Court's impending discussion, it first addresses Plaintiff's claim for § 1988 attorney's fees, then it turns to judicial immunity with respect to Judge Ransom (and Hancock County's inevitable dismissal as a consequence of that immunity), and lastly it discusses the implications that the Anti-Injunction Act and the abstention doctrine from *Younger v. Harris*, 401 U.S. 37 (1971), have on Plaintiff's § 1983 claims against Chief Walker and the City of Sparta.

1. **Plaintiff's Claim for Attorney's Fees Under 42 U.S.C. § 1988**

Easy stuff first. Plaintiff, as mentioned above, is proceeding pro se. So, his claim for attorney's fees under § 1988 is out. When it comes to pro se litigants seeking these statutorily permissible fees—should they prevail in their lawsuit—the Supreme Court is not only crystal clear, but firm. "[A] pro se litigant . . . is not entitled to attorney's fees" under § 1988. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991). Plain and simple.

### 2. Judicial Immunity

Regarding Plaintiff's First, Fourth, and Fourteenth Amendment claims brought pursuant to § 1983 against Judge Ransom, those are out as well because judicial immunity renders them frivolous. Again, a claim is frivolous "if it is without arguable merit either in law or fact." *Anderson v. Fulton Cnty. Gov't*, 485 F. App'x 394, 395 (11th Cir. 2012); *Neitzke*, 490 U.S. at 325. "Few doctrines [are] more solidly established" than the doctrine of judicial immunity. *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967).

The Supreme Court has established a two-pronged test for determining when a judge is entitled to immunity for his actions. *King v. Thornburg*, 762 F. Supp. 336, 341 (S.D. Ga. 1991) (citing *Stump v. Sparkman*, 435 U.S. 349, 350, 356–57 (1978)). "The first prong addresses whether the judge dealt with the plaintiff in his judicial capacity." *Id.* (citing *Stump*, 435 U.S. at 357). If the answer to that question is no, then judicial immunity does not apply. If the answer is yes, then courts "ask whether the judge acted in the 'clear absence of all jurisdiction.'" *Id.* In other words, "[j]udges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the 'clear absence of all jurisdiction.'" *Anderson*, 485 F. App'x at 395 (quoting *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005)). "A judge acts in 'clear absence of all jurisdiction' only if he lacked subject-matter jurisdiction." *McCullough*, 907 F.3d at 1332.

Now, whether a judge did something while acting in his judicial capacity

depends on four things. *See Anderson*, 485 F. App'x at 395. First, the act complained of must constitute a normal judicial function. *Id.* Second, the events complained of need to have "occurred in the judge's chambers or in open court." *Id.* Third, the events complained of must involve a case pending before the judge. *Id.* And fourth, the confrontation has to arise "immediately out of a visit to the judge in his judicial capacity." *Id.* Here, each of those things point to the clear existence of judicial immunity for Judge Ransom.

Chief Walker submitted a report to Judge Ransom, and Judge Ransom issued a warrant for Plaintiff's arrest. [Doc. 1, p. 2]. To put a little more detail in the mix, Plaintiff unquestionably filed this lawsuit to block the execution of an arrest warrant allegedly issued by a magistrate judge from Hancock County based on allegedly cooked-up allegations from the City of Sparta's police chief. Issuance of arrest warrants, however, is exactly the type of action judicial immunity is designed to protect, *see Pierson*, 386 U.S. at 554, and Plaintiff's allegation that Chief Walker's report was "false"—thus prompting the notion that Judge Ransom should've never issued the arrest warrant in the first place—doesn't alter the analysis. [*Id.*]. Whether Chief Walker's report was "false" is completely irrelevant. [Doc. 1, p. 2]. Why? Because "[a]bsolute judicial immunity 'applies even when the judge's acts are in error, malicious, or were in excess of his . . . jurisdiction." *Anderson*, 485 F. App'x at 395 (quoting *Sibley*, 437 F.3d at 1070).

Again, a judicial immunity analysis looks to whether a plaintiff's claims deal

with a normal judicial function, and here, they do. "The hearing of applications for and the issuance of arrest and search warrants" is unquestionably within the province of a magistrate judge's functions under Georgia law. O.C.G.A. § 15-10-2(a)(1). Therefore, Judge Ransom is entitled to judicial immunity, and Plaintiff's § 1983 claims asserted against him are **DISMISSED** as frivolous pursuant to § 1915(e)(2)(B)(i) and on immunity grounds pursuant to § 1915(e)(2)(B)(iii). *Wuyisa v. City of Mia. Beach*, 614 F. App'x 389, 392 (11th Cir. 2015) (per curiam) (municipal court judges entitled to absolute immunity from damages for actions taken in official capacity).

Plaintiff also generally seeks declaratory relief against Judge Ransom. [Doc. 1, p. 2]. Although the Eleventh Circuit has suggested that § 1983 would not "explicitly bar [a] request for declaratory relief" against a judge, *Esensoy v. McMillan*, No. 06-12580, 2007 WL 257342, at *1 n.5 (11th Cir. Jan. 31, 2007) (per curiam), Plaintiff has failed to demonstrate that he is entitled to such relief. A party is only eligible for declaratory relief under § 1983 if he can "establish that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000) (per curiam); *see also Sibley*, 437 F.3d at 1073–74. For the issues Plaintiff raises in this case, an adequate remedy at law exists for the harm allegedly suffered. *See Pattee, infra*.

The Court also **DISMISSES** Plaintiff's § 1983 claims and his claims for injunctive and declaratory relief against Hancock County **without prejudice**. In his Complaint,

10

Plaintiff states that he's suing Hancock County only because it "oversees the judicial functions of the Hancock County Magistrate Court." [Doc. 1, p. 2]. Since Judge Ransom enjoys absolute judicial immunity, it only follows that Plaintiff's claims against Hancock County necessarily fall as well.

### 3.     The Anti-Injunction Act

As for Plaintiff's request for an injunction to essentially block Judge Ransom's arrest warrant, that request is barred by the Anti-Injunction Act. [Doc. 1, p. 2]. The Anti-Injunction Act, 28 U.S.C. § 2283, "serves as a check on the broad authority" given to courts by the All Writs Act, 28 U.S.C. § 1651. *Burr & Forman v. Blair*, 470 F.3d 1019, 1027 (11th Cir. 2006). The All Writs Act provides, "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651.

However, the Anti-Injunction Act "prohibits federal courts from utilizing [their] authority" under the All Writs Act "to stay proceedings in [a] state court unless the requirements of one of three narrow exceptions are met."[4] *Id.* That is exactly the relief Plaintiff seeks via his Complaint. [Doc. 1, p. 2 (Plaintiff's request that the Court "[i]ssue

---

[4] "The Anti-Injunction Act's animus is . . . rooted in federalism concerns—a desire to avoid tension and preserve comity between the federal and state courts." *Burr & Forman v. Blair*, 470 F.3d 1019, 1028 (11th Cir. 2006).

11

an injunction prohibiting enforcement of the [allegedly] unlawful warrant")]. The overall spirit of Plaintiff's Complaint is unquestionably aimed at one thing: using this Court—a federal court—to stop state officials from carrying out an arrest warrant. Under the Anti-Injunction Act, however, an injunction halting a proceeding from a state court is inappropriate "except as expressly authorized by Act of Congress, or where necessary in aid of [a federal court's] jurisdiction, or [for federal courts] to protect or effectuate [their] judgments." *Burr*, 470 F.3d at 1027 (quoting 28 U.S.C. § 2283).

"In 1972, the Supreme Court held in *Mitchum* [*v. Foster*] that '§ 1983 is an Act of Congress that falls within "the expressly authorized" exception' in the Anti-Injunction Act." *Richardson v. Davis*, No. 1:25-CV-03375-JPB-AWH, 2025 WL 2743900, at *6 (N.D. Ga. Aug. 6, 2025) (quoting 407 U.S. 225, 243 (1972)). Several years later, however, "after *Mitchum* was decided, Congress amended § 1983 to add the following language: 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'" *Id.* (first quoting 42 U.S.C. § 1983; and then citing *Machetta v. Moren*, 726 F. App'x 219, 220 (5th Cir. 2018)).

So, in addition to Judge Ransom's entitlement to judicial immunity, the Anti-Injunction Act also bars Plaintiff's claims against him for declaratory and injunctive relief under § 1983 because Plaintiff has an adequate remedy at law—or avenue—to challenge charges based on fleeing, elusion, and obstruction in the state-court system if

12

he is ever arrested on those charges. *See Tarver v. Reynolds*, 808 F. App'x 752, 754 (11th Cir. 2020) (first quoting *Bolin*, 225 F.3d at 1242; and then citing *Sibley*, 437 F.3d at 1074); [Doc. 2-1, ¶ 7]. Since none of the three exceptions to the Anti-Injunction Act are applicable, it serves as "an absolute prohibition against enjoining [the] state court proceedings" being carried out against Plaintiff. *Id.* (quoting *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970)). For these reasons, the Court must **DENY** Plaintiff's Motion to Quash Arrest Warrant [Doc. 3].

### 4. The *Younger* Abstention Doctrine

Finally, regarding Plaintiff's § 1983 claims against Chief Walker and the City of Sparta, Plaintiff's Complaint faces real issues when it comes to *Younger*'s abstention doctrine. The doctrine "derives from 'the vital consideration of comity between the state and national governments,'" and it prevents federal courts from interfering with ongoing criminal prosecution from state courts. 401 U.S. at 43–45; *31 Foster Child. v. Bush*, 329 F.3d 1255, 1279 (11th Cir. 2003). In *Younger*, the Supreme Court held that federal courts should abstain from suits aimed at restraining pending state criminal prosecutions. 401 U.S. at 41.

Federal courts "should assume that state procedures will afford an adequate remedy" to address allegations of the kind asserted by Plaintiff in this case. *See 31 Foster Child.*, 329 F.3d at 1279. The Court must consider "the likelihood" that this case will "seriously disrupt[] the legitimate functioning of the judicial system of the state." *Wells*

13

*v. Mulholland*, No. 24-12535, 2025 WL 1860248, at *1 (11th Cir. July 7, 2025). While the Court notes the exceptions to *Younger* abstention, none are applicable to Plaintiff's case. Specifically, these exceptions look to whether "(1) there is evidence of state proceedings motivated by bad faith; (2) irreparable injury would occur; or (3) there is no adequate alternative state forum where the constitutional issues can be raised." *Wells*, 2025 WL 1860248, at *2 (quoting *Johnson v. Fla.*, 32 F.4th 1092, 1099 (11th Cir. 2022)).

Here, Plaintiff's allegations bear out rather conclusory statements concerning bad faith from Chief Walker. Plaintiff labels Chief Walker's report to Judge Ransom as "false" on the basis that Chief Walker's "actions appear to be retaliatory, as he was embarrassed by [Plaintiff's] refusal to continuing engaging in public" at the convenience store. [Doc. 2-1, ¶ 7]. This does nothing to suggest that Plaintiff faces criminal arrest or prosecution "motivated . . . by a purpose to retaliate for or to deter" constitutionally protected conduct. *Wells*, 2025 WL 1860248, at *2 (quoting *Wilson v. Thompson*, 593 F.2d 1375, 1387 (11th Cir. 1979)). Notwithstanding Plaintiff's conclusory allegation that Chief Walker's "actions *appear* retaliatory"—an allegation that is not entitled to the presumption of truth because of its conclusory nature—the motives for Chief Walker's actions can be adequately addressed in state court should there ever be a criminal prosecution against Plaintiff. [Doc. 1-2, ¶ 7 (emphasis added)]; *McCullough*, 907 F.3d at 1333 (citing *Iqbal*, 556 U.S. at 679) ("Conclusory allegations are not entitled to the assumption of truth."). Plaintiff's allegation that something "appear[s]" retaliatory

14

because Chief Walker might be "embarrassed" is not enough for the *Younger* bad faith exception to apply. [Doc. 1-2, ¶ 7].

Again, this circles back to the "recognition of the need for a proper balance in the concurrent operation of federal and state courts" and the former's "restraint against the issuance of injunctions against state officers engaged in the administration of the State's criminal laws in the absence of a showing of irreparable injury which is 'both great and immediate.'" *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974) (quoting *Younger*, 401 U.S. at 46). Further, there is no irreparable-injury concern for the Court since the state-court system is more than equipped to address the positions Plaintiff makes in this case—should he ever be arrested. *Younger*, 401 U.S. at 43–44 (discussing that the "basic doctrine of equity jurisprudence [affirms] that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief"). And, lastly, the state criminal prosecution—if there ever even is one—and the state-court system will afford Plaintiff the opportunity to raise his constitutional concerns as a defense against any potential criminal charges. *See, e.g.*, *State v. Pattee*, 411 S.E.2d 751 (Ga. Ct. App. 1991) (discussing issues concerning motion to quash under Georgia law). Should Plaintiff ever be arrested for the events discussed in his Complaint and should the state criminal proceedings—again, to the extent there are any—be resolved in his favor, *then* he will have a possible opportunity to bring his § 1983 claims

against Chief Walker and the City of Sparta with more knowledge and understanding of the facts that led to the prosecution.

While Plaintiff's § 1983 claims against Chief Walker and the City of Sparta could survive frivolity review under § 1915(e), they cannot proceed forward for the required factual development at this time considering the United States Supreme Court's holding in *Younger*. 401 U.S. at 46–49. Plaintiff has not shown that Chief Walker's actions were motivated by bad faith. He has not shown that any special circumstances exist which create a threat of irreparable harm unless the Court intervenes to quash the arrest warrant. The fact that Plaintiff might endure a state criminal prosecution fails to demonstrate irreparable harm. *See id.* at 46 ("The imminence of . . . a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid.") (quoting *Beal v. Mo. Pac. R.R. Corp.*, 312 U.S. 45, 49 (1941)). Nor has Plaintiff shown that he will be somehow deprived of an adequate forum where his constitutional challenges can be addressed.

Based on *Younger*'s application in the case, the Court **DISMISSES** Plaintiff's claims for injunctive and declaratory relief **without prejudice**. *See Gibson v. Berryhill*, 411 U.S. 564, 577 (1973). However, Plaintiff's remaining claims for damages under § 1983 against Chief Walker and the City of Sparta must be **STAYED** pending the resolution of any state criminal charges against him concerning the events complained of in his

Complaint. *Doby v. Strength*, 758 F.2d 1405, 1406 (11th Cir. 1985) (per curiam) (extending *Younger* to § 1983 actions for money damages). Until that time, the Court **ADMINISTRATIVELY CLOSES** this case. If Plaintiff wishes to proceed with his damages claims, Plaintiff will be required to file a motion to reopen this case within ***30 days*** of the conclusion of any criminal proceedings against him. Plaintiff's failure to timely file a motion to reopen this case may result in the dismissal of his remaining claims.

### E. Conclusion

In conclusion, the Court **GRANTS** Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* [Doc. 2]; **DISMISSES** his claims against Judge Michael Ransom and Hancock County, Georgia, as further set out above; **DENIES** his Motion to Quash Arrest Warrant [Doc. 3]; and **DISMISSES** his claims for injunctive and declaratory relief **without prejudice**. Lastly, the Court **STAYS** and **ADMINISTRATIVELY CLOSES** this action as further set out above.

**SO ORDERED**, this 10th day of October, 2025.

*S/ Tilman E. Self, III*
**TILMAN E. SELF, III**
**UNITED STATES DISTRICT JUDGE**